LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
30 East 39th Street, Second Floor
New York, NY 10016
Tel.: 212-465-1188
Fax: 212-465-1181
*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____

JOSEPH DEPHILLIPS,
*on behalf of himself and all others similarly situated,*

                               Case No.:

       Plaintiff,                      **CLASS ACTION COMPLAINT**

              -against-

PASSIONS NETWORK, INC.,

       Defendant.

_____

Plaintiff, JOSEPH DEPHILLIPS (hereinafter "Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned attorney, hereby files this Class Action Complaint against Defendant, PASSIONS NETWORK, INC. (hereinafter "Defendant"), and states as follows:

<u>**INTRODUCTION**</u>

      1.     This class action seeks to put an end to systemic civil rights violations committed by Defendant against the blind in New York State and across the United States. Defendant is denying blind individuals throughout the United States equal access to the goods and services Defendant provides to its non-disabled customers through https://passionsnetwork.com (hereinafter the "Website"). The Website provides to the public a wide array of the goods, services, and other opportunities offered by Defendant. Yet, the Website contains access barriers

that make it difficult, if not impossible, for blind users to use the Website. Defendant thus excludes the blind from the full and equal participation in the growing Internet economy that is a fundamental part of the common marketplace and daily living. In the wave of technological advances in recent years, assistive computer technology is becoming an increasingly prominent part of everyday life, allowing blind people to fully and independently access a variety of services, including online dating.

2.      Plaintiff is a blind individual. He brings this civil rights class action against Defendant for failing to design, construct, and/or own or operate a website that is fully accessible to, and independently usable by, blind people.

3.      Specifically, the Website has many access barriers preventing blind people from independently navigating, using, and creating an account on the Website using assistive computer technology.

4.      Plaintiff uses the terms "blind person" or "blind people" and "the blind" to refer to all persons with visual impairments who meet the legal definition of blindness in that they have a visual acuity with correction of less than or equal to 20/200. Some blind people who meet this definition have limited vision. Others have no vision.

5.      Approximately 8.1 million people in the United States are visually impaired, including 2.0 million who are blind.[1] There are approximately 400,000 visually impaired persons in New York State.[2]

6.      Many blind people enjoy using the Internet just as sighted people do. The lack of an accessible website means that blind people are excluded from the rapidly expanding online dating industry and from independently accessing the Website.

---

[1] Americans with Disabilities: 2010 Report, U.S. Census Bureau Reports
[2] American Foundation for the Blind, State-Specific Statistical Information, January 2015

7.      Despite readily available accessible technology, such as the technology in use at other heavily trafficked websites, which makes use of alternative text, accessible forms, descriptive links, and resizable text, and limits the usage of tables and JavaScript, Defendant has chosen to rely on a predominantly visual interface. Defendant's sighted users can independently browse, select, and create an account without the assistance of others. However, blind people must rely on sighted companions to assist them in navigating and creating an account on the Website.

8.      By failing to make the Website accessible to blind persons, Defendant is violating basic equal access requirements under both state and federal law.

9.      Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the Americans with Disabilities Act. Such discrimination includes barriers to full integration, independent living, and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons. Similarly, New York state law requires places of public accommodation to ensure access to goods, services and facilities by making reasonable accommodations for persons with disabilities.

10.     Plaintiff attempted to create an account on the Website. However, unless Defendant remedies the numerous access barriers on the Website, Plaintiff and Class members will continue to be unable to independently navigate, browse, and use the Website.

11.     This complaint seeks declaratory and injunctive relief to correct Defendant's policies and practices to include measures necessary to ensure compliance with federal and state law, to include monitoring of such measures, and to update and remove accessibility barriers on

the Website so that Plaintiff and the proposed Class and Subclass of customers who are blind will be able to independently and privately use the Website. This complaint also seeks compensatory damages to compensate Class members for having been subjected to unlawful discrimination.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188, for Plaintiff's claims arising under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq.*, ("ADA").

13.    This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, over Plaintiff's pendent claims under the New York State Human Rights Law, N.Y. Exec. Law, Article 15 (Executive Law § 290 *et seq*.) and the New York City Human Rights Law, N.Y.C. Administrative Code § 8-101 *et seq*. ("City Law").

14.    Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1441(a). Defendant is subject to personal jurisdiction in the Southern District of New York because Defendant's principal place of business is located in the Southern District of New York. Defendant is incorporated in New York County, New York.

## PARTIES

15.    Plaintiff is and has been at all times material hereto a resident of Arlington, Virginia.

16.    Plaintiff is legally blind and a member of a protected class under the ADA, 42 U.S.C. § 12102(1)-(2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*, the New York State Human Rights Law, and the New York City Human Rights Law. Plaintiff cannot use a computer without the assistance of screen reading software. Plaintiff has been denied the full enjoyment of the facilities, goods, and services of the Website, as a result of accessibility

barriers on the Website. Most recently in June 2018, Plaintiff attempted to create an account on the Website but could not do so due to the inaccessibility of the Website. The inaccessibility of the Website has deterred him and Class members from enjoying the goods and services of Defendant.

17.     Defendant is a domestic business corporation organized under the laws of the State of New York. Its principal executive office is located at 303 Greenwich Street, 5E, New York, New York 10013.

18.     Defendant owns and operates Passions Network (hereinafter the "Dating Service"), a dating service found online on the Website, which is a place of public accommodation. The Dating Service provides to the public an important online dating service. Among other things, the Website provides access to the array of goods and services offered to the public by Defendant. The inaccessibility of the Website has deterred Plaintiff from creating an account online.

19.     Plaintiff, on behalf of himself and others similarly situated, seeks full and equal access to the services provided by Defendant through the Website.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff, on behalf of himself and all others similarly situated, seeks certification of the following nationwide Class pursuant to Rule 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure: "all legally blind individuals in the United States who have attempted to access the Website and as a result have been denied access to the enjoyment of goods and services offered by Defendant, during the relevant statutory period."

21.     Plaintiff seeks certification of the following New York Subclass pursuant to Fed.R.Civ.P. 23(a), 23(b)(2), and, alternatively, 23(b)(3): "all legally blind individuals in New York State who have attempted to access the Website and as a result have been denied access to the enjoyment of goods and services offered by Defendant, during the relevant statutory period."

22.     There are hundreds of thousands of visually impaired persons in New York State. There are approximately 8.1 million people in the United States who are visually impaired. Thus, the persons in the Class are so numerous that joinder of all such persons is impractical and the disposition of their claims in a class action is a benefit to the parties and to the Court.

23.     This case arises out of Defendant's policy and practice of maintaining an inaccessible website denying blind persons access to the goods and services of the Website and the Dating Service. Due to Defendant's policy and practice of failing to remove access barriers, blind persons have been and are being denied full and equal access to independently browse the Website and by extension the goods and services offered through the Website by the Dating Service.

24.     There are common questions of law and fact common to the class, including without limitation, the following:

  a.     Whether the Website is a "public accommodation" under the ADA;

  b.     Whether the Website is a "place or provider of public accommodation" under the laws of New York;

  c.     Whether Defendant through its Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the ADA; and

  d.     Whether Defendant through its Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities in violation of the laws of New York.

25.     The claims of the named Plaintiff are typical of those of the Class. The Class, similarly to Plaintiff, are severely visually impaired or otherwise blind, and claim that Defendant

has violated the ADA and/or the laws of New York by failing to update or remove access barriers on the Website so that it can be independently accessible to the Class of people who are legally blind.

26.    Plaintiff will fairly and adequately represent and protect the interests of the members of the Class because Plaintiff has retained and is represented by counsel competent and experienced in complex class action litigation, and because Plaintiff has no interests antagonistic to the members of the Class. Class certification of the claims is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

27.    Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to Class members clearly predominate over questions affecting only individual Class members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

28.    Judicial economy will be served by maintenance of this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

29.    References to Plaintiff shall be deemed to include the named Plaintiff and each member of the Class, unless otherwise indicated.

## FACTUAL ALLEGATIONS

30.    Defendant owns and operates the Dating Service, a network of niche dating sites.

31.    The Website is a service and benefit offered by Defendant throughout the United States, including New York State. The Website is owned, controlled and/or operated by Defendant.

32.    Among the features offered by the Website are the following:

(a)    the ability to create an account, allowing members to browse and match with active members of the Dating Service;

(b)    an instant messaging service;

(c)    the ability to join multiple niche dating sites;

(d)    and various other resources.

33.    This case arises out of Defendant's policy and practice of denying the blind access to the Website, including the goods and services offered by Defendant through the Website. Due to Defendant's failure and refusal to remove access barriers to the Website, blind individuals have been and are being denied equal access to the Dating Service, as well as to the numerous goods, services, and benefits offered to the public through the Website.

34.    Defendant denies the blind access to goods, services, and information made available through the Website by preventing them from freely navigating the Website.

35.    The Internet has become a significant source of information for conducting business and for doing everyday activities such as shopping, banking, dating, etc., for sighted and blind persons.

36.    The blind access websites by using keyboards in conjunction with screen reading software which vocalizes visual information on a computer screen. Except for a blind person whose residual vision is still sufficient to use magnification, screen access software provides the only method by which a blind person can independently access the Internet. Unless websites are designed to allow for use in this manner, blind persons are unable to fully access Internet websites and the information, products, and services contained therein.

37.     There are well established guidelines for making websites accessible to blind people. These guidelines have been in place for at least several years and have been followed successfully by other large business entities in making their websites accessible. The Web Accessibility Initiative ("WAI"), a project of the World Wide Web Consortium which is the leading standards organization of the Web, has developed guidelines for website accessibility, called the Web Content Accessibility Guidelines ("WCAG"). The federal government has also promulgated website accessibility standards under Section 508 of the Rehabilitation Act. These guidelines are readily available via the Internet, so that a business designing a website can easily access them. These guidelines recommend several basic components for making websites accessible, including, but not limited to: ensuring that all functions can be performed using a keyboard and not just a mouse; adding alternative text to non-text content; and adding headings so that blind people can easily navigate the site. Without these very basic components, a website will be inaccessible to a blind person using a screen reader.

38.     The Website contains access barriers that prevent free and full use by Plaintiff and blind persons using keyboards and screen reading software. These barriers are pervasive and include but are not limited to: the denial of keyboard access; insufficient labeling; unknown links; the lack of alt-text on graphics; and an inability to skip repeated blocks of content.

39.  The Website contains functions that cannot be completed using the keyboard. In the header, the "Members" main menu button and all of the submenu options under all of the main menu buttons are not accessible via the keyboard. Yet, according to WCAG 2.1 Guideline 2.1.1, it is a fundamental tenet of web accessibility that for a web page to be accessible to Plaintiff and blind people, it must be possible for the user to interact with the page using only the keyboard. Indeed, Plaintiff and blind users cannot use a mouse because manipulating the mouse is a visual

activity of moving the mouse pointer from one visual spot on the page to another. Thus, the Website's inaccessible design denies Plaintiff and blind customers the ability to independently navigate the Website, create an account, and find potential matches.

40.    The Website lacks sufficient labeling to ensure that Plaintiff and other blind users can reliably access the Website, create an account, and find matches. The Website contains numerous advertisements, which contain numerous links, that are not properly labeled. These advertisements appear both on the original webpage and as popups. Blind users are unable to determine which links direct them to Defendants' services and which links direct them to risky websites that could give their computers viruses. On the homepage, Plaintiff is unable to ascertain how to create an account for the Dating Service, due the multiplicitous links that tout other dating services that are unrelated to Defendant's Dating Service. Thus, the Website is inaccessible to blind users attempting to create an account and browse and find potential matches.

41.    WCAG 2.1 Guideline 2.4.4 states that the purpose of each link must be determinable. Sighted users can ascertain the purpose of links by reading the link text and the surrounding descriptions and by recognizing the images in which the links are embedded. Blind users, however, must rely on a combination of screen reading software and proper coding to determine what sighted users can recognize at a glance. In the header, the search link is labeled "link," so blind users cannot determine its purpose. Given the Website's multiple instances of third-party links that are unrelated to Defendant's dating service, it is unreasonable to expect Plaintiff and blind users to select an unknown link. Thus, the Website is inaccessible to blind users attempting to access the Website, create an account, and find potential matches.

42.    Alternative text ("Alt-text") is invisible code embedded beneath a graphical image on a website. WCAG 2.1 Guideline 1.1.1 requires that alt-text be coded with each picture so that

10

a screen reader can speak the alternative text while a sighted user sees the picture. Alt-text does not change the visual presentation except that it appears as a text pop-up when the mouse moves over the picture. There are many important pictures on the Website that lack a text equivalent. On the homepage, the images of the members are simply read as "graphic," preventing screen readers from accurately vocalizing a description of the photos. As a result, Plaintiff and blind customers are unable to determine what is on the Website, browse the site, create an account, and/or investigate the Dating Service's products and services.

43.    According to WCAG 2.1 Guideline 2.4.1, a mechanism is necessary to bypass blocks of content that are repeated on multiple webpages because requiring users to extensively tab before reaching the main content is an unacceptable barrier to accessing the Website. Plaintiff must tab through every menu option on the Website, including all the links in third-party advertisements, in order to reach the main content. Thus, the Website's inaccessible design denies Plaintiff and blind users the ability to independently navigate the Website.

44.    The Website thus contains access barriers which deny full and equal access to Plaintiff, who would otherwise use the Website and who would otherwise be able to fully and equally enjoy the benefits and services of the Dating Service. Users must create an account to fully access the Dating Service and browse for potential matches.

45.    Plaintiff has made numerous attempts to create an account on the Website, most recently in June 2018 but was unable to do so independently because of the many access barriers on the Website. These access barriers have caused the Website to be inaccessible to, and not independently usable by, blind and visually impaired individuals.

46.    As described above, Plaintiff has actual knowledge of the fact that the Website contains access barriers causing it to be inaccessible, and not independently usable by, blind and visually impaired individuals.

47.    These barriers to access have denied Plaintiff full and equal access to, and enjoyment of, the goods, benefits and services of the Website and the Dating Service.

48.    Defendant engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

(a)    constructing and maintaining a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

(b)    constructing and maintaining a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c)    failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

49.    Defendant utilizes standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others.

## FIRST CAUSE OF ACTION

(Violation of 42 U.S.C. §§ 12181, *et seq.* — Title III of the Americans with Disabilities Act)
(on behalf of Plaintiff and the Class)

50.    Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

51.    Title III of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12182(a), provides that "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a

place of public accommodation." Title III also prohibits an entity from "[u]tilizing standards or criteria or methods of administration that have the effect of discriminating on the basis of disability." 42 U.S.C. § 12181(b)(2)(D)(I).

52.     The Dating Service is a sales establishment and public accommodation within the definition of 42 U.S.C. § 12181(7). The Website is a service, privilege or advantage of Defendant. The Website is a service that is by and integrated with the Dating Service. Independent of the Dating Service, the Website is also a public accommodation.

53.     Defendant is subject to Title III of the ADA because it owns and operates the Website.

54.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(I), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity.

55.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

56.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

57.    In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

58.    There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their websites accessible, including but not limited to ensuring that all functions can be performed using a keyboard and adding alt-text to non-text content. Incorporating the basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

59.    The acts alleged herein constitute violations of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* and the regulations promulgated thereunder. Patrons of Defendant who are blind have been denied full and equal access to the Website, have not been provided services that are provided to other patrons who are not disabled, and/or have been provided services that are inferior to the services provided to non-disabled patrons.

60.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

61.    As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations

and/or opportunities of the Website and the Dating Service in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.* and/or its implementing regulations.

62.     Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the proposed class and subclass will continue to suffer irreparable harm.

63.     The actions of Defendant were and are in violation of the ADA and therefore Plaintiff invokes his statutory right to injunctive relief to remedy the discrimination.

64.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

65.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION

(Violation of New York State Human Rights Law, N.Y. Exec. Law,
Article 15 (Executive Law § 292 *et seq.*).)
(on behalf of Plaintiff and New York subclass)

66.     Plaintiff realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

67.     N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

68.     The Dating Service is a sales establishment and public accommodation within the definition of N.Y. Exec. Law § 292(9). The Website is a service, privilege, or advantage of the Dating Service. The Website is a service that is by and integrated with the Dating Service.

Independent of the Dating Service, the Website is a public accommodation.

69.    Defendant is subject to New York Human Rights Law because it owns and operates the Dating Service and the Website. Defendant is a person within the meaning of N.Y. Exec. Law § 292(1).

70.    Defendant is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to the Website, causing the Website and the services integrated with the Dating Service to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

71.    Specifically, under N.Y. Exec. Law § 296(2)(c)(I), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations."

72.    In addition, under N.Y. Exec. Law § 296(2)(c)(II), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

73.    There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by

other large business entities in making their websites accessible, including but not limited to ensuring that all functions can be performed using a keyboard and adding alt-text to non-text content. Incorporating the basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

74.    Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the New York State Human Rights Law, N.Y. Exc. Law § 296(2) in that Defendant has:

> (a)    constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or
>
> (b)    constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or
>
> (c)    failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

75.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

76.    As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class and subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website and the Dating Service under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Subclass will continue to suffer irreparable harm.

77.    The actions of Defendant were and are in violation of New York State Human Rights Law and therefore Plaintiff invokes his right to injunctive relief to remedy the

discrimination.

78.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines pursuant to N.Y. Exc. Law § 297(4)(c) *et seq.* for each and every offense.

79.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

80.    Pursuant to N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

### THIRD CAUSE OF ACTION

(Violation of New York State Civil Rights Law, NY CLS Civ R,

Article 4 (CLS Civ R § 40 *et seq.*)

(on behalf of Plaintiff and New York subclass)

81.    Plaintiff served notice thereof upon the attorney general as required by N.Y. Civil Rights Law § 41.

82.    Plaintiff realleges and incorporates by reference the foregoing allegations as though fully set forth herein.

83.    N.Y. Civil Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . . ."

84.    N.Y. Civil Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be subjected to any discrimination in his or her civil rights, or to any harassment, as defined in

section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

85.     The Dating Service located in New York State is a sales establishment and public accommodation within the definition of N.Y. Civil Rights Law § 40. The Website is a service, privilege or advantage of the Dating Service. The Website is a service that is by and integrated with the Dating Service.

86.     Defendant is subject to New York Civil Rights Law because it owns and operates the Dating Service and the Website. Defendant is a person within the meaning of N.Y. Civil Rights Law § 40-C(2).

87.     Defendant is violating N.Y. Civil Rights Law § 40-C(2) in refusing to update or remove access barriers to the Website, causing the Website and the services integrated with the Dating Service to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Defendant makes available to the non-disabled public.

88.     There are readily available, well established guidelines on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making the Website accessible, including but not limited to: ensuring that all functions can be performed using a keyboard and adding alt-text to non-text content. Incorporating the basic components to make the Website accessible would neither fundamentally alter the nature of Defendant's business nor result in an undue burden to Defendant.

89.     In addition, N.Y. Civil Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty-two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than

five hundred dollars, to be recovered by the person aggrieved thereby . . . ."

90.    Specifically, under NY Civil Rights Law § 40-D, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the defendant shall reside . . . ."

91.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

92.    As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed class on the basis of disability are being directly or indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq.* and/or its implementing regulations.

93.    Plaintiff is entitled to compensatory damages of five hundred dollars per instance, as well as civil penalties and fines pursuant to N.Y. Civil Law § 40 *et seq.* for each and every offense.

**FOURTH CAUSE OF ACTION**

(Violation of New York City Human Rights Law,
N.Y.C. Administrative Code § 8-102, *et seq.*)
(on behalf of Plaintiff and New York subclass)

94.    Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

95.    N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation, because of

. . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person, any of the accommodations, advantages, facilities or privileges thereof."

96.     The Dating Service is a sales establishment and public accommodation within the definition of N.Y.C. Administrative Code § 8-102(9). The Website is a service, privilege or advantage of the Dating Service. Independent of the Dating Service, the Website is a public accommodation.

97.     Defendant is subject to City Law because it owns and operates the Dating Service and the Website. Defendant is a person within the meaning of N.Y.C. Administrative Code § 8-102(1).

98.     Defendant is violating N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to the Website, causing the Website and the services integrated with the Dating Service to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods, and services that Defendant makes available to the non-disabled public. Specifically, Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating on the basis of disability shall make reasonable accommodation to enable a person with a disability to . . . enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Administrative Code § 8-107(15)(a).

99.     Defendant's actions constitute willful intentional discrimination against the class on the basis of a disability in violation of the N.Y.C. Administrative Code § 8-107(4)(a) and § 8-107(15)(a) in that Defendant has:

(a) constructed and maintained a website that is inaccessible to blind class

members with knowledge of the discrimination; and/or

(b) constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

(c) failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

100.    Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

101.    As such, Defendant discriminates, and will continue in the future to discriminate against Plaintiff and members of the proposed Class and Subclass on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website and the Dating Service under § 8-107(4)(a) and/or its implementing regulations. Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Subclass will continue to suffer irreparable harm.

102.    The actions of Defendant were and are in violation of City Law and therefore Plaintiff invokes his right to injunctive relief to remedy the discrimination.

103.    Plaintiff is also entitled to compensatory damages, as well as civil penalties and fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense.

104.    Plaintiff is also entitled to reasonable attorneys' fees and costs.

105.    Pursuant to N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION

(Declaratory Relief)
(on behalf of Plaintiff and the Class)

106.    Plaintiff realleges and incorporates by reference the foregoing allegations as if set forth fully herein.

107.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access barriers denying blind customers the full and equal access to the goods, services and facilities of the Website and by extension the Dating Service, which Defendant owns, operates, and/or controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq*., N.Y. Exec. Law § 296, *et seq.,* and N.Y.C. Administrative Code § 8-107, *et seq.* prohibiting discrimination against the blind.

108.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests relief as follows:

109.    A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

110.    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

111.    A declaration that Defendant owns, maintains and/or operates the Website sin a manner which discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. § 12182, *et seq.,* N.Y. Exec. Law § 296, *et seq.,* N.Y.C. Administrative Code § 8-107, *et seq.*, and the laws of New York;

112.    An order certifying this case as a class action under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

113.    Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed Subclass for violations of their civil rights under the New York State Human Rights Law and City Law;

114.    Plaintiff's reasonable attorneys' fees, statutory damages, expenses, and costs of suit as provided by state and federal law;

115.    For pre- and post-judgment interest to the extent permitted by law; and

116.    Such other and further relief as the Court deems just and proper.

DATED: June 11, 2018                                    LEE LITIGATION GROUP, PLLC
                                                        C.K. Lee (CL 4086)
                                                        Anne Seelig (AS 3976)
                                                        30 East 39th Street, Second Floor
                                                        New York, NY 10016
                                                        Tel.: 212-465-1188
                                                        Fax: 212-465-1181


                                                        By: */s/ C.K. Lee*_____
                                                             C.K. Lee, Esq.